IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| CIPLA LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Gilead Sciences, Inc. ("Gilead" or "Plaintiff"), by its attorneys, hereby alleges as follows:

## NATURE OF THE ACTION

1.     Gilead is a leading research-based pharmaceutical company that discovers, develops, and brings to market transformative medicines in areas of unmet medical need, including treatments for human immunodeficiency virus ("HIV"), hepatitis B virus, hepatitis C virus, liver diseases, serious cardiovascular and respiratory diseases, and cancer.

2.     This case relates to Gilead's DESCOVY®, which has benefited hundreds of thousands of people and is recognized as one of the most successful medicines in its class. Approved by the U.S. Food and Drug Administration ("FDA") in 2016, DESCOVY® has been proven safe and effective for, among other things, HIV treatment and HIV prevention in at-risk populations.  DESCOVY® contains two main components—tenofovir alafenamide ("TAF") and emtricitabine ("FTC").  Both have contributed to the medicine's clinical and commercial success.

3.     Gilead's extensive research and development program for DESCOVY® led to numerous groundbreaking inventions.  For example, Gilead invented several forms of TAF,

including TAF hemifumarate, TAF monofumarate, and TAF sesquifumarate. Gilead's invention of TAF hemifumarate is protected by U.S. Patent Nos. 8,754,065 and 9,296,769 (the "TAF Hemi Patents"), which, with applicable pediatric exclusivity, expire in February 2033. The TAF Hemi Patents are listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for DESCOVY®. Gilead's invention of TAF sesquifumarate resulted in U.S. Patent No. 9,777,028 (the "TAF Sesqui Patent"), which expires in June 2036. Gilead also invented novel chemical methods to produce TAF in an efficient, reliable, and commercially feasible manner. That work resulted in U.S. Patent Nos. 8,664,386, 9,029,534, 9,346,841, and 9,676,804 (the "TAF Process Patents"), which expire in October 2032. The TAF Hemi Patents, the TAF Sesqui Patent, and the TAF Process Patents are, collectively, the "Patents-in-Suit."

4.    Seeking to benefit from Gilead's substantial investments, inventions, research and development, and data that resulted in DESCOVY®, several generic pharmaceutical companies previously filed abbreviated new drug applications ("ANDAs") with the FDA for approval of generic versions of DESCOVY® prior to the expiration of the TAF Hemi and other Orange Book patents. One of those companies was Defendant Cipla Limited ("Cipla" or "Defendant"). Cipla submitted ANDA No. 214059 to FDA under 21 U.S.C. § 355(j) seeking approval to engage in the commercial manufacture, use, or sale of a product made under an ANDA referencing DESCOVY® for the treatment of HIV-1 infection in adults and pediatric patients. That case resulted in litigation about Cipla's infringement of the TAF Hemi Patents (and others) in this District between 2020 and 2022. *See Gilead Sciences, Inc. v. Apotex, Inc. et al.*, No. 20-189-MN (D. Del.) (the "TAF ANDA Litigation"). The TAF ANDA Litigation settled on the eve of trial.

5.      Cipla now wants an end run around the 2022 TAF ANDA Settlement Agreement. Still seeking to benefit from Gilead's substantial investments, inventions, and data that resulted in DESCOVY®, Cipla is requesting FDA approval of another TAF/FTC product prior to the expiration of the Orange-Book-listed TAF Hemi Patents and the other Patents-in-Suit.  On information and belief, Cipla submitted New Drug Application No. 220756 to the FDA pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FDCA") that references Gilead's New Drug Application for DESCOVY® ("Cipla's 505(b)(2) Application").  Cipla's 505(b)(2) Application seeks approval for Cipla to market emtricitabine/tenofovir alafenamide oral tablets in 120 mg/EQ 15 mg base and 200 mg/EQ 25 mg base strengths ("Cipla's 505(b)(2) Products").  On information and belief, Cipla's 505(b)(2) Application included a certification pursuant to 21 U.S.C. § 355(b)(2)(A)(iv) (a "Paragraph IV Certification") for the TAF Hemi Patents.

6.      In view of Cipla's Paragraph IV Certification and information about Cipla's 505(b)(2) Products that is currently available to Gilead, Gilead brings this action against Cipla for infringement of the Patents-in-Suit.  Cipla has infringed one or more claims of the TAF Hemi Patents and TAF Sesqui Patent under 35 U.S.C. § 271(e)(2)(A) by virtue of the filing of the Cipla 505(b)(2) Application with a Paragraph IV Certification and seeking FDA approval of the Cipla 505(b)(2) Application prior to the expiration of the TAF Hemi Patents and TAF Sesqui Patent.  Additionally, on information and belief, Cipla will imminently infringe one or more claims of the TAF Hemi Patents, the TAF Sesqui Patent, and the TAF Process Patents under 35 U.S.C. §§ 271(a), (b), and/or (g) by making, using, offering for sale, selling, and/or importing the Cipla 505(b)(2) Products in or into the United States.

**PARTIES**

7.      Gilead is a corporation organized and existing under the laws of Delaware, having a principal place of business at 333 Lakeside Drive, Foster City, California 94404.

8.      Gilead's mission is to discover, develop, and deliver innovative therapeutics for people with life-threatening diseases, including treatments and preventatives for HIV infection. Gilead sells DESCOVY® in this judicial district and throughout the United States.

9.      On information and belief, Cipla is a company organized and existing under the laws of India, having its principal place of business at Cipla House, Peninsula Business Park, Ganpatrao Kadam Marg, Lower Parel, Mumbai 400013, India.

**JURISDICTION & VENUE**

10.      This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 *et seq.*, and this Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

11.      The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual, substantial, and justiciable controversy exists between Gilead and Cipla of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patents-in-Suit.

12.      This Court has personal jurisdiction over Cipla by virtue of, among other things, its systematic and continuous contacts with this jurisdiction.  On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, Cipla regularly and continuously transacts business within Delaware, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including Delaware.  On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, the FDA has approved more than 190 Cipla applications

seeking to market and sell pharmaceutical products throughout the United States, including in Delaware.  On information and belief, Cipla derives substantial revenue from the sale of those products in Delaware and has availed itself of the privilege of conducting business within Delaware.

13.    On information and belief, Cipla markets and distributes its pharmaceutical products through subsidiaries, agents, and/or affiliates including Cipla USA Inc., a Delaware corporation that is registered to do business and has appointed an agent to accept service in Delaware.

14.    This Court also has personal jurisdiction because Cipla has filed its 505(b)(2) Application seeking approval from the FDA to market and sell its 505(b)(2) Products throughout the United States, including in Delaware.  On information and belief, Cipla intends to commercially manufacture, use, and sell Cipla's 505(b)(2) Products upon receiving FDA approval.  On information and belief, if and when the FDA approves Cipla's 505(b)(2) Application, Cipla's 505(b)(2) Products would, among other things, be marketed, distributed and sold in Delaware, and/or prescribed by physicians practicing and dispensed by pharmacies located within Delaware, all of which would have a substantial effect on Delaware.  By filing its 505(b)(2) Application, Cipla has made clear that it intends to use its distribution channels to direct sales of Cipla's 505(b)(2) Products into Delaware.

15.    Further, this Court has personal jurisdiction over Cipla because Cipla has previously been sued in this District and has not challenged personal jurisdiction, and Cipla has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Acerta Pharma B.V. v. Cipla Ltd.*, C.A. No. 24-587, D.I. 10 (D. Del. July 22, 2024); *Astellas Pharma Inc. v. Cipla Ltd.*, C.A. No. 24-1333, D.I. 24 (D. Del. Feb. 18, 2025).  Indeed,

Cipla litigated the TAF ANDA Litigation, which was a case and counterclaims involving Cipla's infringement of the TAF Hemi Patents, to the eve of trial in this District. *See Gilead Scis., Inc. v. Apotex, Inc. et al.*, C.A. No. 20-189-MN (D. Del.). Upon information and belief, Cipla has also availed itself of the legal protections of the State of Delaware by having filed suit in this jurisdiction. *See, e.g.*, *Cipla Ltd. v. Boehringer Ingelheim Pharms. Inc.*, C.A. No. 22-300, D.I. 2 (D. Del. Mar. 4, 2022); *Cipla Ltd. v. AstraZeneca AB*, C.A. No. 19-733, D.I. 2 (D. Del. Apr. 24, 2019).

16. Alternatively, this Court may exercise personal jurisdiction over Cipla pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Gilead's claims arise under federal law; (b) Cipla is a foreign company not subject to personal jurisdiction in the courts of any state; and (c) Cipla has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Cipla satisfies due process.

17. Venue is proper in this Court under 28 U.S.C. §§ 1391(c)(3) because Cipla is a foreign corporation and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, including in this District.

## BACKGROUND

18. Gilead developed a groundbreaking HIV antiviral called tenofovir in the 1990s. Tenofovir is a potent HIV antiviral, but it is not viable as an oral medicine. To bring this breakthrough to patients, Gilead chemists needed to find ways to change tenofovir to make it orally bioavailable while retaining its remarkable activity. Gilead did this by creating and studying many prodrugs of tenofovir—molecules that can be absorbed by the body and then convert to tenofovir once in the body or in target cells.

19.     TAF is one of the tenofovir prodrugs that Gilead invented.  TAF has the following chemical structure:



Notably, TAF has three stereocenters, including one at its phosphorus atom.  This makes TAF difficult to manufacture at commercially viable levels.

20.     Gilead continued to study TAF and discovered that it was remarkably effective. Gilead found that TAF was ten times more active than another leading tenofovir prodrug (called TDF) and exhibited a surprising and unexpected ability to accumulate tenofovir preferentially in the cells that serve as an HIV reservoir.

21.     Gilead began developing TAF as a clinical candidate in 2010.  At that point, Gilead needed a commercially feasible way to make TAF.  One way Gilead solved this problem was to invent a new manufacturing technique for TAF.  Gilead discovered a synthetic route to TAF that substantially increased the useful yield for the TAF manufacturing process and made it commercially feasible.

22.     A second way that Gilead solved this problem was to study many different multi-component forms of TAF, such as salts, cocrystals, hydrates and solvates.  Gilead discovered a form of TAF called TAF monofumarate ("TAF Mono"), which is a composition in which one molecule of TAF is associated with one molecule of fumaric acid.  It also discovered a form called TAF hemifumarate ("TAF Hemi")—a composition in which two molecules of TAF are

associated with one molecule of fumaric acid.  TAF Hemi is the TAF fumarate drug substance in DESCOVY®.

23.     TAF (in its hemifumarate form) was first approved by the FDA as a component of Gilead's GENVOYA®, which is indicated for HIV treatment.  Today, TAF is a component of six FDA-approved medicines.[1]  TAF-containing medicines have become a preferred treatment option for HIV and hepatitis B virus in many patient populations.  It is estimated that millions of people with HIV worldwide have used TAF-based medicines.

24.     DESCOVY® is one of those TAF-based medicines.  Gilead holds approved NDA No. 208215 for DESCOVY® tablets in two strengths: 200 mg of emtricitabine and 25 mg of TAF base equivalents, and 120 mg of emtricitabine and 15 mg of TAF base equivalents.  DESCOVY® was approved for HIV treatment in 2016 and HIV prevention (pre-exposure prophylaxis, or PrEP) in 2019.

**PATENTS-IN-SUIT**

25.     On June 17, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,754,065 (the "'065 Patent"), titled "Tenofovir Alafenamide Hemifumarate."  A true and correct copy of the '065 Patent is attached hereto as Exhibit A.  The claims of the '065 Patent are valid, enforceable, and will not expire until February 15, 2033 (with applicable pediatric exclusivity).  Gilead is the assignee of the '065 Patent and has the right to enforce it.

26.     On March 29, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,296,769 (the "'769 Patent"), titled "Tenofovir Alafenamide Hemifumarate."  A

---

[1] Many HIV medicines are fixed-dose combinations—single tablets that contain multiple active components, like TAF.  TAF is a component in GENVOYA®, ODEFSEY®, DESCOVY®, BIKTARVY®, and SYMTUZA® fixed-dose combination medicines.  TAF is also in a medicine called VEMLIDY®.

true and correct copy of the '769 Patent is attached hereto as Exhibit B.  The claims of the '769 Patent are valid, enforceable, and will not expire until February 15, 2033 (with applicable pediatric exclusivity).  Gilead is the assignee of the '769 Patent and has the right to enforce it.

27.     On October 3, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,777,028 (the "'028 Patent"), titled "Co-Crystals, Salts and Solid Forms of Tenofovir Alafenamide."  A true and correct copy of the '028 Patent is attached hereto as Exhibit C.  The claims of the '028 Patent are valid, enforceable, and will not expire until June 13, 2036.  Gilead is the assignee of the '028 Patent and has the right to enforce it.

28.     On March 4, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,664,386 (the "'386 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs."  A true and correct copy of the '386 Patent is attached hereto as Exhibit D. The claims of the '386 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '386 Patent and has the right to enforce it.

29.     On May 12, 2015, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,029,534 (the "'534 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs."  A true and correct copy of the '534 Patent is attached hereto as Exhibit E. The claims of the '534 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '534 Patent and has the right to enforce it.

30.     On May 24, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,346,841 (the "'841 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs."  A true and correct copy of the '841 Patent is attached hereto as Exhibit F. The claims of the '841 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '841 Patent and has the right to enforce it.

31.     On June 13, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,676,804 (the "'804 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs."  A true and correct copy of the '804 Patent is attached hereto as Exhibit G. The claims of the '804 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '804 Patent and has the right to enforce it.

32.     At least one claim of each of the TAF Hemi Patents covers DESCOVY® or approved methods of using DESCOVY®.  Gilead's commercial process for manufacturing DESCOVY® also practices at least one claim of the TAF Process Patents.

**CIPLA'S INFRINGEMENT OF THE PATENTS-IN-SUIT**

33.     On information and belief, Cipla submitted its 505(b)(2) Application seeking the FDA's approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of Cipla's 505(b)(2) Products in or into the United States before the expiration of each Patent-In-Suit.

34.     By letter dated December 29, 2025, and received by Gilead via Federal Express no earlier than December 30, 2025, Cipla notified Gilead that Cipla had submitted its 505(b)(2) Application to the FDA, seeking approval to market the Cipla 505(b)(2) Products in reliance on Gilead's investments, inventions, and data ("Cipla's Notice Letter").

35.     By submitting its 505(b)(2) Application and as stated in its Notice Letter, Cipla has represented to the FDA that its 505(b)(2) Products contain FTC/TAF in the same dosage amounts as DESCOVY®; that Cipla desires for the FDA to rely on Gilead's DESCOVY® data to approve Cipla's 505(b)(2) Products; and that Cipla's 505(b)(2) Application contains data as required to show that its 505(b)(2) Products have the same bioavailability as and/or are bioequivalent to DESCOVY®.

36.    Upon information and belief, Cipla's 505(b)(2) Application included a Paragraph IV Certification with respect to the TAF Hemi Patents.  According to its Notice Letter, Cipla has alleged to the FDA "that in Cipla's opinion and to the best of its knowledge, the '065 and '769 patents are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in Cipla's 505(b)(2) application," and that Cipla seeks approval to engage in the commercial manufacture, use, and sale of its 505(b)(2) Products in the United States before the TAF Hemi Patents expire.  Cipla's Notice Letter also claims that "Cipla prepares its 505(b)(2) Products in India, not the United States."

37.    Despite making these serious allegations, Cipla's Notice Letter failed to comply with the Hatch-Waxman Act's requirements.  For example, FDA's regulations require a notice of a Paragraph IV Certification for a 505(b)(2) application to include "[t]he established name, if any, as defined in section 502(e)(3) of the Federal Food, Drug, and Cosmetic Act, of the proposed drug product," 21 C.F.R. § 314.52(c)(3), and "[t]he active ingredient, strength, and dosage form of the proposed drug product," *id.* § 314.52(c)(4).  Cipla's Notice Letter simply identified its 505(b)(2) Products as "emtricitabine/tenofovir alafenamide tablets," the active ingredient as "emtricitabine/tenofovir alafenamide," and the strength as "120 mg/EQ 15 mg base and 200 mg/EQ 25 mg base."  Critically, Cipla's identification of the strength as an "EQ," or equivalent, of "base" indicates that TAF is present in a form that likely is not a free base form, but nowhere does Cipla identify what that form is.  Because Cipla's Notice Letter failed to comply with the Hatch-Waxman Act and implementing regulations, Cipla has prejudiced Gilead's ability to fully assess evidence of Cipla's infringement before the expiration of the Hatch-Waxman Act's 45-day period to bring an infringement suit.  Gilead reserves its right to contest the adequacy of Cipla's Notice Letter and to request tolling of the 30-month stay of FDA

approval of Cipla's 505(b)(2) Application until Gilead receives a compliant Notice Letter, but brings this suit now, within 45 days of receipt of Cipla's Notice Letter, out of an abundance of caution.

38.     Cipla's Notice Letter also imposed unreasonable restrictions on Gilead's ability to fully assess evidence of Cipla's infringement.  Although Cipla's Notice Letter included an Offer of Confidential Access ("OCA"), that OCA did not comply with the Hatch-Waxman Act.  Under 21 U.S.C. § 355(c)(3)(D)(i)(III), an OCA "shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information."  Cipla's OCA contained unreasonable restrictions, above and beyond those that would apply under a protective order.  For example, Cipla's OCA included a regulatory bar that would block any recipient of Cipla's 505(b)(2) Application from "any FDA counseling, litigation or other work before or involving the FDA related to Cipla's [505(b)(2) Application]."  In the TAF ANDA Litigation between Gilead and Cipla, Cipla stipulated to and the Court entered a protective order that does not include a regulatory bar.

39.     Gilead and Cipla have been negotiating in good faith in an effort to reach a mutually acceptable agreement under which Cipla would provide Gilead additional information to assess infringement.  To date, the parties have been unable to reach agreement.  Gilead requires discovery from Cipla.

40.     Nonetheless, on information and belief based on statements in Cipla's Notice Letter and publicly available information, Cipla's 505(b)(2) Application seeks approval for a form of TAF fumarate.

41.     Cipla's Notice Letter repeatedly attempts to cast its unidentified product as outside the scope of the TAF Hemi Patents' claims by discussing the scope of the claims relative to possible TAF fumarate forms.  For example, Cipla's Notice Letter alleges that "Claim 1 … clearly excludes other fumarates such as mono-, di-, and tri-fumarates.  *As such*, the TAF form used in the Cipla 505(b)(2) Products cannot be considered equivalent."  (emphasis added).  This statement indicates that Cipla believes itself to be making a product that contains a form of TAF fumarate, although Cipla attempts to obscure this information by not expressly saying so and forcing Gilead to make inferences based on the information presently available to it.

42.     On information and belief, Cipla holds three Drug Master Files ("DMFs") for TAF fumarate compositions.  The FDA's public listing of DMFs for the fourth quarter of 2025 states that Cipla holds DMF No. 30991, submitted on Oct. 28, 2016, for "TENOFOVIR ALAFENAMIDE FUMARATE"; DMF No. 33603, submitted on Apr. 2, 2019, for "TENOFOVIR ALAFENAMIDE FUMARATE (C)"; and DMF No. 37460, submitted on Sept. 27, 2022, for "TENOFOVIR ALAFENAMIDE MONOFUMARATE."[2]  These are the only TAF DMFs associated with Cipla in FDA's list—Cipla is not identified as holding a DMF for any form of TAF other than a fumarate.  Indeed, no company is identified as holding an active DMF for any form of TAF other than a TAF fumarate.

---

[2] U.S. Food & Drug Admin., Approved Drug Products with Therapeutic Equivalence Evaluations (Orange Book) (4Q 2025), https://www.fda.gov/media/190708/download? attachment.

43.     On information and belief, Cipla supplies compositions of TAF fumarates to third parties.  For example, a 2020 publication by authors from Sandoz reported obtaining "tenofovir alafenamide monofumarate form I" from "Cipla, Mumbai, India."[3]

44.     On information and belief, the processes used to prepare TAF fumarates, including in particular TAF monofumarate, can produce other fumarate forms as well, including TAF hemifumarate and TAF sesquifumarate.  For example, European Patent No. 3,411,378 B1 describes a method for the "[p]reparation of tenofovir alafenamide monofumarate" that yields "a mixture of tenofovir alafenamide monofumarate form I and tenofovir alafenamide hemifumarate."  Therefore, on information and belief based on the information presently known to Gilead, Cipla's 505(b)(2) Products will contain multiple forms of TAF fumarate, including TAF monofumarate, TAF hemifumarate, and TAF sesquifumarate.  Gilead requires discovery from Cipla, including samples of Cipla's 505(b)(2) Products, in order to assess the exact composition of those products.

45.     On information and belief, Cipla's 505(b)(2) Products will also include TAF prepared according to the process claimed in one or more of the TAF Process Patents.  As described above, Gilead's extensive experience with TAF revealed that it was difficult to produce TAF on a commercial scale without using the inventions claimed in the TAF Process Patents.  On information and belief based on the information presently known to Gilead, it is likely that Cipla utilizes the process claimed in one or more of the TAF Process Patents to produce its 505(b)(2) Products.

---

[3] Hannes Lengauer, et al., *Co-crystals, Salts or Mixtures of Both? The Case of Tenofovir Alafenamide Fumarates,* 12 Pharmaceutics 4, 34 (2020), https://www.mdpi.com/1999-4923/12/4/342.

46.    On information and belief, Cipla is seeking approval to market its 505(b)(2) Products for some or all of the same approved indications as DESCOVY®.  On information and belief, Cipla's proposed label for its 505(b)(2) Products will instruct physicians and healthcare providers to administer Cipla's 505(b)(2) Products for, among other things, the treatment of HIV-1 infection in adults and pediatric patients, and at-risk adults and adolescents for pre-exposure prophylaxis (PrEP) to reduce the risk of HIV-1 infection.

47.    Under the Hatch-Waxman Act, an owner of a patented medicine must file an action in federal court within 45 days of receiving a Paragraph IV notice letter in order to receive certain benefits under the Act, including a stay of approval of the 505(b)(2) application for up to 30 months during the pendency of litigation, as appropriate, pursuant to 21 U.S.C. § 355(c)(3)(C).  Having attempted to negotiate access to Cipla's 505(b)(2) Application and other information that would assist it in further evaluating infringement, Gilead is not aware of any other means of obtaining information regarding Cipla's 505(b)(2) Products within the 45-day statutory period.  In the absence of such information, Gilead resorts to the judicial process and the aid of discovery to obtain, under appropriate judicial safeguards, such information as is required to confirm its belief, and to present to the Court evidence, that Cipla has and will infringe certain claims of the Patents-in-Suit.  Gilead files this action before the expiration of forty-five days from the date of Gilead's receipt of the Notice Letter.

## CLAIMS FOR RELIEF

## COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 8,754,065

48.    Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

49.    On information and belief based on the information presently available to Gilead, Cipla's submission of the Cipla 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2)

Products in or into the United States before the expiration of the '065 Patent constituted a statutory act of infringement of at least one claim of the '065 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

50.    On information and belief based on the information presently available to Gilead, upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one claim of the '065 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States. This entitles Gilead to a declaratory judgment and associated relief.

51.    On information and belief based on the information presently available to Gilead, upon FDA approval of the Cipla 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '065 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell the Cipla 505(b)(2) Products in the United States, or to import the Cipla 505(b)(2) Product into the United States. Upon information and belief, Cipla has knowledge of the '065 Patent— which was the subject of the TAF ANDA Litigation—and knowledge that its acts are encouraging infringement. This also entitles Gilead to a declaratory judgment and associated relief.

52.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '065 Patent under 35 U.S.C. §§ 271(a) and (b). Cipla has submitted its 505(b)(2) Application to the FDA

seeking to market its 505(b)(2) Products in the United States upon approval. Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its 505(b)(2) Products before the expiration of the '065 Patent. On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the '065 Patent.

53.    On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '065 Patent because FDA approval and Cipla's commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

54.    Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's manufacture, use, offer for sale, sale and/or importation of the Cipla 505(b)(2) Products in or into the United States prior to expiration of the '065 Patent, and Cipla's inducement of such conduct, will infringe the '065 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

55.     If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '065 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 9,296,769**

56.     Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

57.     On information and belief based on the information presently available to Gilead, Cipla's submission of the Cipla 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States before the expiration of the '769 Patent constituted a statutory act of infringement of at least one claim of the '769 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

58.     On information and belief based on the information presently available to Gilead, upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one claim of the '769 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States.  This entitles Gilead to a declaratory judgment and associated relief.

59.     On information and belief based on the information presently available to Gilead, upon FDA approval of the Cipla 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '769 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell the Cipla 505(b)(2) Products in the United States, or to import the Cipla 505(b)(2) Product

into the United States.  Upon information and belief, Cipla has knowledge of the '769 Patent—
which was the subject of the TAF ANDA Litigation—and knowledge that its acts are
encouraging infringement.  This also entitles Gilead to a declaratory judgment and associated
relief.

60.     A definite and concrete, real and substantial, justiciable controversy of sufficient
immediacy and reality exists between Gilead and Cipla regarding infringement of the '769 Patent
under 35 U.S.C. §§ 271(a) and (b).  Cipla has submitted its 505(b)(2) Application to the FDA
seeking to market its 505(b)(2) Products in the United States upon approval.  Cipla's Notice
Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture,
use, or sale of its 505(b)(2) Products before the expiration of the '769 Patent.  On information
and belief, Cipla has made and will continue to make substantial and meaningful preparations to
import into the United States or to offer to sell, sell, or use within the United States the Cipla
505(b)(2) Products prior to the expiration of the '769 Patent.

61.     On information and belief, FDA assesses and seeks to act on 505(b)(2)
applications within ten months of submission.  On information and belief, there is immediacy
and imminent risk of infringement of the '769 Patent because FDA approval and Cipla's
commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for
the 30-month stay caused by this litigation.  *See* FDA, *PDUFA Reauthorization Performance
Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to
"[r]eview and act on 90 percent of priority non-NME original NDA submissions [including
505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME
original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not
limited to, the submission of its 505(b)(2) Application with a Paragraph IV Certification and

Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

62.      Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's manufacture, use, offer for sale, sale and/or importation of the Cipla 505(b)(2) Products in or into the United States prior to expiration of the '769 Patent, and Cipla's inducement of such conduct, will infringe the '769 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

63.      If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '769 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 9,777,028

64.      Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

65.      On information and belief based on the information presently available to Gilead, Cipla's submission of the Cipla 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Cipla 505(b)(2) Products in or into the United States before the expiration of the '028 Patent constituted a statutory act of infringement of at least one claim of the '028 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 7, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

66.      On information and belief based on the information presently available to Gilead, upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one claim of the '028 Patent under 35 U.S.C. § 271(a), including but not limited to claim 7, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling the Cipla

505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States.  This entitles Gilead to a declaratory judgment and associated relief.

67.     On information and belief based on the information presently available to Gilead, upon FDA approval of the Cipla 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '028 Patent under 35 U.S.C. § 271(b), including but not limited to claim 7, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell the Cipla 505(b)(2) Products in the United States, or to import the Cipla 505(b)(2) Product into the United States.  Upon information and belief, Cipla has knowledge of the '028 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.  This also entitles Gilead to a declaratory judgment and associated relief.

68.     A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '028 Patent under 35 U.S.C. §§ 271(a) and (b).  Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its 505(b)(2) Products before the expiration of TAF Hemi Patents, which expire before the '028 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the '028 Patent.

69.     On information and belief, FDA assesses and seeks to act on 505(b)(2)
applications within ten months of submission. On information and belief, there is immediacy
and imminent risk of infringement of the '028 Patent because FDA approval and Cipla's
commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for
the 30-month stay caused by this litigation. *See* FDA, *PDUFA Reauthorization Performance
Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to
"[r]eview and act on 90 percent of priority non-NME original NDA submissions [including
505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME
original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not
limited to, the submission of its 505(b)(2) Application with a Paragraph IV Certification and
Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its
505(b)(2) Application indicate a refusal to change its course of action and intent to launch
imminently.

70.     Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that
Cipla's manufacture, use, offer for sale, sale and/or importation of the Cipla 505(b)(2) Products
in or into the United States prior to expiration of the '028 Patent, and Cipla's inducement of such
conduct, will infringe the '028 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

71.     If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of
the '028 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial
and irreparable harm for which there is no adequate remedy at law.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,664,386

72.     Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

73.     On information and belief based on the information presently available to Gilead,
at least upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one

claim of the '386 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is made in India by the process claimed in the '386 Patent.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product.  This entitles Gilead to a declaratory judgment and associated relief.

74.    Upon information and belief, Cipla has knowledge of the '386 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

75.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '386 Patent under 35 U.S.C. § 271(g).  Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its 505(b)(2) Products before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the '386 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to

offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the '386 Patent.

76.     On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission.  On information and belief, there is immediacy and imminent risk of infringement of the '386 Patent because FDA approval and Cipla's commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by this litigation.  *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not limited to, the submission of its 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

77.     Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of the Cipla 505(b)(2) Products will infringe the '386 Patent pursuant to at least 35 U.S.C. § 271(g).

78.     If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '386 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 9,029,534

79.     Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

80.     On information and belief based on the information presently available to Gilead, at least upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one claim of the '534 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is made in India by the process claimed in the '534 Patent.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product.  This entitles Gilead to a declaratory judgment and associated relief.

81.     Upon information and belief, Cipla has knowledge of the '534 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

82.     A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '534 Patent under 35 U.S.C. § 271(g).  Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its 505(b)(2) Products before the expiration of TAF Hemi Patents, which expire nearly contemporaneously with the '534 Patent.  On information and belief, Cipla has made and will

continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the '534 Patent.

83.    On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission.  On information and belief, there is immediacy and imminent risk of infringement of the '534 Patent because FDA approval and Cipla's commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by this litigation.  *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not limited to, the submission of its 505(b)(2) Application with Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

84.    Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of the Cipla 505(b)(2) Products will infringe the '534 Patent pursuant to at least 35 U.S.C. § 271(g).

85.    If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '534 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 9,346,841

86.    Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

87.    On information and belief based on the information presently available to Gilead, at least upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one claim of the '841 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is made in India by the process claimed in the '841 Patent.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product.  This entitles Gilead to a declaratory judgment and associated relief.

88.    Upon information and belief, Cipla has knowledge of the '841 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

89.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '841 Patent under 35 U.S.C. § 271(g).  Cipla has submitted its 505(b)(2) Application to the FDA seeking to market its 505(b)(2) Products in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its 505(b)(2) Products before the expiration of TAF Hemi Patents, which expire nearly

contemporaneously with the '841 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the expiration of the '841 Patent.

90.    On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission.  On information and belief, there is immediacy and imminent risk of infringement of the '841 Patent because FDA approval and Cipla's commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for the 30-month stay caused by this litigation.  *See* FDA, *PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not limited to, the submission of its 505(b)(2) Application with Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

91.    Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of the Cipla 505(b)(2) Products will infringe the '841 Patent pursuant to at least 35 U.S.C. § 271(g).

92.     If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '841 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT VII:  INFRINGEMENT OF U.S. PATENT NO. 9,676,804

93.     Each of the preceding paragraphs 1-47 is incorporated as if fully set forth herein.

94.     On information and belief based on the information presently available to Gilead, at least upon FDA approval of the Cipla 505(b)(2) Application, Cipla will infringe at least one claim of the '804 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling the Cipla 505(b)(2) Products in the United States or by importing the Cipla 505(b)(2) Products into the United States.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is made in India by the process claimed in the '804 Patent.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's 505(b)(2) Products is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product.  This entitles Gilead to a declaratory judgment and associated relief.

95.     Upon information and belief, Cipla has knowledge of the '804 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

96.     A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '804 Patent under 35 U.S.C. § 271(g).  Cipla has submitted its 505(b)(2) Application to the FDA seeking to

market its 505(b)(2) Products in the United States upon approval.  Cipla's Notice Letter states

that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of

its 505(b)(2) Products before the expiration of TAF Hemi Patents, which expire nearly

contemporaneously with the '804 Patent.  On information and belief, Cipla has made and will

continue to make substantial and meaningful preparations to import into the United States or to

offer to sell, sell, or use within the United States the Cipla 505(b)(2) Products prior to the

expiration of the '804 Patent.

97.     On information and belief, FDA assesses and seeks to act on 505(b)(2)

applications within ten months of submission.  On information and belief, there is immediacy

and imminent risk of infringement of the '804 Patent because FDA approval and Cipla's

commercialization of the Cipla 505(b)(2) Products may occur as early as summer 2026, but for

the 30-month stay caused by this litigation.  *See* FDA, *PDUFA Reauthorization Performance*

*Goals and Procedures Fiscal Years 2023 Through 2027*, at 4 (stating FDA's commitment to

"[r]eview and act on 90 percent of priority non-NME original NDA submissions [including

505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME

original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not

limited to, the submission of its 505(b)(2) Application with a Paragraph IV Certification and

Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its

505(b)(2) Application, indicate a refusal to change its course of action and intent to launch

imminently.

98.     Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that

Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use

in the United States of the Cipla 505(b)(2) Products will infringe the '804 Patent pursuant to at least 35 U.S.C. § 271(g).

99.     If Cipla's marketing and sale of the Cipla 505(b)(2) Product prior to expiration of the '804 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Gilead respectfully requests the following relief:

(a)     a judgment that Cipla has infringed the TAF Hemi Patents and TAF Sesqui Patent under 35 U.S.C. § 271(e)(2), either literally or under the doctrine of equivalents;

(b)     a judgment pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of Cipla's 505(b)(2) Application under § 505(b) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(b)) is not earlier than the day after the expiration of the TAF Hemi Patents and TAF Sesqui Patent, including any applicable exclusivity period to which Gilead is or becomes entitled;

(c)     a judgment declaring that the commercial manufacture, use, offer for sale, sale and/or importation of Cipla's 505(b)(2) Products would constitute infringement of the Patents-in-Suit, or induce such conduct, pursuant to 35 U.S.C. § 271(a), (b), and/or (g), either literally or under the doctrine of equivalents, and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

(d)     a judgment permanently enjoining Cipla, its affiliates, subsidiaries, and each of its officers, agents, attorneys and employees, and those acting in privity or concert with them, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of Cipla's 505(b)(2) Products until the day after the expiration of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes

entitled, and from otherwise infringing one or more claims of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(e)      damages or other monetary relief under 35 U.S.C. § 271(a), (b), (g), and (e)(4)(c) and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Gilead if Cipla engages in commercial manufacture, use, offers to sell, sale, and/or importation in or into the United States of Cipla's 505(b)(2) Products prior to the latest expiration date of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled;

(f)      an order that this case is exceptional;

(g)      an award of Gilead's costs, expenses, reasonable attorneys' fees and such other relief as the Court deems just and proper pursuant to 35 U.S.C. § 285; and

(h)      any such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

OF COUNSEL:

Vinita C. Ferrera
Emily R. Whelan
Timothy A. Cook
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

February 10, 2026

*Attorneys for Plaintiff Gilead Sciences, Inc.*